**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

KIDS MAGIC LLC,

Plaintiff,

v.

THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A,

Defendants.

Case No. 1:26-cv-02064

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR ENTRY OF AN ORDER TO SHOW CAUSE WITH A TEMPORARY RESTRAINING ORDER, A TEMPORARY ASSET RESTRAINT, AN ORDER FOR EXPEDITED DISCOVERY, AND GRANTING PERMISSION TO EFFECTUATE SERVICE OF PROCESS BY E-MAIL AND ELECTRONIC PUBLICATION**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... iii

I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. RELEVANT FACTS ..... 3

A. Plaintiff's Intellectual Property Protects Its Successful Plim Plim Brand ..... 3

B. Defendants Are Infringers of PLIM PLIM Products ..... 4

1. Defendants Operate Legitimate-Looking Internet Stores ..... 7

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines ..... 7

3. Defendants Conceal Their Identities ..... 8

4. Defendants Evade Enforcement ..... 8

III. ARGUMENT ..... 9

A. This Court May Exercise Personal Jurisdiction Over Defendants ..... 11

B. Standard for Temporary Restraining Order and Preliminary Injunction ..... 13

C. Plaintiff's Claim Will Likely Succeed on the Merits ..... 13

D. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief ..... 15

E. The Balancing of Equities Tips in Plaintiff's Favor ..... 18

F. Issuance of the Injunction Is in the Public Interest. ..... 18

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE. ..... 19

A. A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate. ..... 20

B. Preventing the Fraudulent Transfer of Assets Is Appropriate. ..... 20

C. Plaintiff Is Entitled to Expedited Discovery ..... 22

D. Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case ..... 24

1. Defendants' Addresses for Service Are Not Known. .............................. 25

2. Defendants' Infringements of Plaintiff's Intellectual Property Create Exigent Circumstance for Service ................................................ 29

V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF ........................ 31

CONCLUSION ........................................................................................................ 31

# TABLE OF AUTHORITIES

**Cases**

*3M Co. v. Performance Supply, LLC*,
458 F. Supp. 3d 181 (S.D.N.Y. 2020) ........ 13, 18

*ABC v. DEF*,
2024 WL 5168624 (S.D.N.Y. Dec. 13, 2024) ........ 30

*AdMarketplace, Inc. v. TeeSupport Inc. et al.*,
2013 WL 4838854 (S.D.N.Y. Sept. 11, 2013) ........ 23

*Allstar Marketing Group, LLC v. 53 Romantic House Store*,
2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020) ........ 2, 11

*Allstar Marketing Group, LLC v. Backforth Tradeltd,*
2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020) ........ 2, 11

*Am. Girl, LLC v. Zembrka*,
118 F.4th 271 (2d Cir. 2024) ........ 12

*Am. Greetings Corp. v. Kleinfab Corp.*,
400 F. Supp. 228 (S.D.N.Y. 1975) ........ 18

*Animale Grp. Inc. v. Sunny's Perfume Inc.*,
256 F. App'x 707 (5th Cir. 2007) ........ 21, 22

*Balenciaga America, Inc. et al., v. Sean Dollinger et al.,*
2010 WL 3952850 (S.D.N.Y. Oct. 8, 2010) ........ 22

*Bulgari S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"*,
2014 WL 3749132 (N.D. Ill. July 18, 2014) ........ 18

*Cengage Learning, Inc. v. Doe 1*,
2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018) ........ passim

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010) ........ 12

*CJ Products LLC v. Snuggly Plushez LLC*,
809 F. Supp. 2d 127 (E.D.N.Y. Aug. 22, 2011) ........ 17

*CJ Products v. Concord Toys*,
2011 WL 178610 (E.D.N.Y. Jan. 19, 2011) ........ 19

*Envirocare Techs., LLC v. Simanovsky*,
2012 WL 2001443 (E.D.N.Y. June 4, 2012) ........ 12

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991)........................................................................................ 13

*Google LLC v. Doe 1*,
2026 WL 353660 (S.D.N.Y. Feb. 9, 2026)............................................................ 24, 25, 28

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*,
527 U.S. 308 (1999)........................................................................................ 21

*Gucci America, Inc. v. Weixing Li,*
2011 WL 6156936 (S.D.N.Y. Aug. 23, 2011)...................................................... 21

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
174 F.3d 411 (4th Cir. 1999) ............................................................................ 31

*Hudson Furniture, Inc. v. Mizrahi*,
2020 WL 5202118 (S.D.N.Y. Sep. 1, 2020)........................................................ 16

*Ideal Indus., Inc. v. Gardener Bender, Inc.*,
612 F.2d 1018 (7th Cir. 1979) .......................................................................... 17

*In re Vuitton et Fils*, *S.A.*,
606 F.2d 1 (2d Cir. 1979) ................................................................................... 2

*Intersell Ventures, LLC v. 1688 Factory Direct Store Store*,
2025 WL 485715 (S.D.N.Y. Feb. 11, 2025)......................................................... 30

*ISC-Bunker Ramo Corp. v. Altech, Inc.*,
765 F. Supp. 1310 (N.D. Ill. 1990)..................................................................... 18

*Jefferson v. Johnson Publ'g, Inc.*,
1992 WL 318615 (N.D. Ill. Oct. 28, 1992) ......................................................... 17

*Kelly Toys Holdings, LLC. v. Top Dep't Store,*
2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022).................................................. 24, 25

*Kipling Apparel Corp. v. Rhys,*
2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016)........................................... 2, 11, 20, 31

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
51 F.3d 982 (11th Cir. 1995) ....................................................................... 21, 22

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*,
2016 WL 3748480 (S.D.N.Y. July 8, 2016)......................................................... 12

*Lindsey Adelman Studio, LLC v. ZORA Lighting Co., Ltd.*,
2019 WL 7599931 (S.D.N.Y. May 29, 2019) ............................................... 2, 10, 11

*Mahmood v. Nielsen*,
312 F. Supp. 3d 417 (S.D.N.Y. 2018) .......... 13

*Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,*
312 F.3d 94 (2d Cir. 2002) .......... 16

*Microsoft Corp. v. 9038-3746 Quebec, Inc.*,
2007 WL 3232465 (N.D. Ohio Nov. 1, 2007) .......... 21

*Mister Softee, Inc. v. Tsirkos*,
2015 WL 7458619 (S.D.N.Y. Nov. 23, 2015) .......... 16

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*,
704 F. Supp. 2d 305 (S.D.N.Y. 2010) .......... 19

*Next Phase Distrib., Inc. v. John Does 1–27*,
284 F.R.D. 165 (S.D.N.Y. 2012) .......... 23

*NYP Holdings v N.Y. Post Publ'g Inc.*,
63 F. Supp. 3d 328 (S.D.N.Y. 2014) .......... 17, 19

*Omega Importing Corp. v. Petri-Kine Camera Co.*,
451 F.2d 1190 (2d Cir. 1971) .......... 16, 17

*Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co., ltd*,
2025 WL 1276618 (S.D.N.Y. Apr. 29, 2025) .......... 30

*Pearson Educ., Inc. v. Labos*,
2019 WL 1949820 (S.D.N.Y. Apr. 23, 2019) .......... 16

*Rathmann Grp. v. Tanenbaum*,
889 F.2d 787 (8th Cir. 1989) .......... 31

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552 (9th Cir. 1992) .......... 21, 22

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) .......... 24, 28, 29

*Rovio Ent., Ltd. v. Allstar Vending, Inc.*,
97 F. Supp. 3d 536 (S.D.N.Y. 2015) .......... 18

*Salvatore Ferragamo S.p.A. v. Does 1-56*,
2020 WL 774237 (S.D.N.Y. Feb. 18, 2020) .......... 17

*Shashi, Inc.v. Ramada Worldwide, Inc.*,
2005 WL 552593 (W.D. Va. Mar. 1, 2005) .......... 19

*Smart Study Co., Ltd v. Shenzhenshixindajixieyouxiangongsi*,
164 F.4th 164 (2d Cir. 2025) .......... 25

*Spin Master Ltd. v. Alan Yuan's Store*,
325 F. Supp. 3d 413 (S.D.N.Y. 2018) .......... 13

*Ty, Inc. v. GMA Accessories, Inc.*,
132 F.3d 1167 (7th Cir. 1997) .......... 16

*Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*,
2021 WL 1249631 (S.D.N.Y. April 5, 2021) .......... passim

*WowWee Grp. Ltd. v. Haoqin*,
2019 WL 1316106 (S.D.N.Y. Mar. 22, 2019) .......... 28

*WPIX, Inc. v. ivi, Inc.,*
691 F.3d 275 (2d Cir. 2012) .......... 16, 18

*Zuru (Singapore) Pte., Ltd. v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associated Identified on Schedule A Hereto*,
2022 WL 14872617 (S.D.N.Y. Oct. 26, 2022) .......... 25

**Statutes**

15 U.S.C. § 1117(a) .......... 3

17 U.S.C. § 101 *et seq*. .......... 11

17 U.S.C. § 501(b) .......... 13

17 U.S.C. § 502 .......... 16, 17, 20

17 U.S.C. § 503 .......... 16, 17, 20

17 U.S.C. § 504 .......... 21

28 U.S.C. § 1331 .......... 11

28 U.S.C. § 1338(a)–(b) .......... 11

28 U.S.C. § 1391 .......... 11

28 U.S.C. § 1400 .......... 11

**Other Authorities**

Hague Conv., Art. 15 .......... 29

**Rules**

C.P.L.R. § 302(a)(1) ........................................ 11, 12

C.P.L.R. § 302(a)(3) ........................................ 11

C.P.L.R. § 6201(1) ........................................ 22

C.P.L.R. § 6201(3) ........................................ 22

C.P.L.R. § 6212(a) ........................................ 22

Fed. R. Civ. P. 26(b)(2) ........................................ 23

Fed. R. Civ. P. 26(d)(1) ........................................ 23

Fed. R. Civ. P. 4 ........................................ 29, 30

Fed. R. Civ. P. 4(b) ........................................ 30

Fed. R. Civ. P. 4(f)(3) ........................................ 24, 28, 29, 30

Fed. R. Civ. P. 4(k) ........................................ 11

Fed. R. Civ. P. 64(a) ........................................ 22

Fed. R. Civ. P. 64(b) ........................................ 22

Fed. R. Civ. P. 65 ........................................ 21

Fed. R. Civ. P. 65(b) ........................................ 10, 13

Fed. R. Civ. P. 65(c) ........................................ 31

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This application (the "Application") arises from Defendants'[1] improper marketing and sale of infringing products online. Plaintiff KIDS MAGIC LLC ("Plaintiff" or "KIDS MAGIC") creates and markets popular children's toys, clothing, books, and other products incorporating its internationally successful Plim Plim character, and it has earned a reputation for quality, reliability, and value with respect to its products displaying the Plim Plim copyrights (the "PLIM PLIM Products"). The PLIM PLIM Products incorporate Plaintiff's copyrights, which are covered by U.S. Copyright Registration Nos. VA 2-415-930 and VA 2-415-942 (the "PLIM PLIM Copyrights").

Defendants have violated Plaintiff's intellectual property rights by promoting, advertising, marketing, distributing, offering for sale, and selling infringing versions of the PLIM PLIM Products. As the examples below and in the Complaint make clear, this is not a close case; Defendants are blatantly copying the PLIM PLIM Copyrights and selling knock-off PLIM PLIM Products as if they were genuine. This illicit conduct is being carried out through various online marketplace accounts listed in **Schedule A** to the Complaint (collectively, the "Defendant Internet Stores").

As is common with these sorts of ecommerce counterfeiters, Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their infringement operations. Plaintiff has filed this action to combat Defendants' infringement of Plaintiff's registered copyrights, as well as to protect consumers from unknowingly purchasing counterfeit PLIM PLIM Products over the internet. In that regard, Plaintiff seeks to enjoin

[1] The Defendants are a collection of foreign ecommerce counterfeiters, identified in Schedule A attached to the Complaint.

Defendants' ongoing unlawful activities, and Plaintiff respectfully requests that this Court issue *ex parte* relief, including:

(1) a temporary restraining order against Defendants, enjoining Defendants from the manufacture, importation, distribution, offering for sale, and sale of infringing products bearing, using, or infringing upon Plaintiff's PLIM PLIM Copyrights (the "Infringing Products");

(2) a temporary restraint of certain of Defendants' assets, described below, to preserve Plaintiff's right to an equitable accounting;

(3) expedited discovery allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Infringing Products, as well as of Defendants' financial accounts;

(4) permission to effectuate service by electronic mail and electronic publication; and

(5) an order against Defendants to show cause why a preliminary injunction should not issue on the return date of the Application.

In light of the covert nature of offshore infringement activities being undertaken by Defendants and the vital need to establish an economic disincentive for infringement, courts regularly issue orders awarding such relief.[2]

Plaintiff's well-pleaded allegations, which are supported by the Declarations submitted in connection with this Application, make clear that such relief is necessary and proper. First, Plaintiff has demonstrated a strong likelihood of success on the merits. Plaintiff is the owner of the valid PLIM PLIM Copyrights and is the distributor of genuine PLIM PLIM Products.

---

[2] *See, e.g.*, *Lindsey Adelman Studio, LLC v. ZORA Lighting Co.*, No. 19-cv-04715, 2019 WL 7599931, (S.D.N.Y. May 29, 2019); *Cengage Learning, Inc. v. Doe 1*, No. 18-cv-403 (RJS), 2018 WL 2244461 (S.D.N.Y. Jan. 17, 2018); *Allstar Mktg. Grp., LLC v. BackforthTradeltd*, No. 20-cv-9073 (PAE), 2020 WL 6700503 (S.D.N.Y. Nov. 12, 2020); *Kipling Apparel Corp. v. Rhys,* No. 16-cv-990 (RJS), 2016 WL 8814345 (S.D.N.Y. Feb. 19, 2016); *Weili Fang and Chee Ray, LLC v. Hangzhou Jiayu Wenhua Chuanmei Youxian Gongsi*, No. 21-cv-00370, 2021 WL 1249631 (S.D.N.Y. Apr. 5, 2021); *Allstar Mktg. Grp., LLC v. 53 Romantic House Store*, 20-cv-9072 (PAE), 2020 WL 6700481 (S.D.N.Y. Nov. 13, 2020); *In re Vuitton et Fils, S.A.*, 606 F.2d 1, 4 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Defendants' unauthorized use of Plaintiff's copyrights to sell Infringing Products has harmed and continues to irreparably harm Plaintiff by diminishing Plaintiff's goodwill in its products, damaging Plaintiff's reputation, and causing consumer confusion. Monetary damages are inadequate to compensate Plaintiff for these harms. Defendants, by contrast, face no cognizable harm whatsoever if they are enjoined from continuing with their misconduct. This makes injunctive relief particularly appropriate.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Infringing Products, in addition to promoting general respect for copyright laws. The public has a right to know what it is purchasing.

Further, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 17 U.S.C. § 504. Finally, an order authorizing service of process by e-mail and electronic publication is appropriate due to Defendants' intentional efforts to conceal their identities and covertly operate their business online. Serving Defendants electronically is the best—likely the only—method for notifying them of this action and providing them the opportunity to defend and present their objections.

Stated simply, the relief sought in this action is necessary to protect Plaintiff's legitimate interests in the PLIM PLIM Copyrights and PLIM PLIM Products. Accordingly, Plaintiff respectfully requests entry of their proposed order in its entirety.

## II. <u>RELEVANT FACTS</u>

### A. <u>Plaintiff's Intellectual Property Protects Its Successful Plim Plim Brand</u>

KIDS MAGIC is the registered owner of the PLIM PLIM Copyrights, which are registrations of two-dimensional and three-dimensional images of the Plim Plim animated

character developed by Plaintiff. *See* Declaration of Juan Carlos Hormaechea (the "Hormaechea Decl.") ¶ 4. Since the products' creation in September 2011, Plaintiff has been the official source of the genuine PLIM PLIM Products in the United States, which include children's clothing, books, toys, party decorations, and other products incorporating the copyrighted images of the Plim Plim character. *Id* ¶ 5.

The Plim Plim character and its affiliated products are and have been the subject of substantial and continuous marketing and promotion by Plaintiff in the industry and to consumers. *Id*. Plaintiff's promotional efforts for the PLIM PLIM Products include, by way of example but not limitation, substantial social media marketing on Instagram, Facebook, and TikTok; print media; the official Plim Plim website (https://plimplim.tv/en/); online advertising; and other publications. *Id* ¶ 7. Plaintiff has expended substantial time, money, and other resources on advertising and otherwise promoting the PLIM PLIM Products. *Id.* As a result, the PLIM PLIM Products are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.*

Plaintiff owns all exclusive rights for PLIM PLIM Copyrights, including without limitation, the rights to reproduce the copyrighted designs in copies, to prepare derivative works based upon the copyrighted designs, and to distribute copies of the copyrighted designs to the public by sale or other transfer of ownership, or by rental, lease, or lending. *Id.* ¶ 4.

### B. Defendants Are Infringers of PLIM PLIM Products

The success of the PLIM PLIM Products has resulted in significant infringement of the PLIM PLIM Copyrights. Hormaechea Decl. ¶ 8. Plaintiff has identified numerous Defendant Internet Stores that sell Infringing Products from foreign countries to consumers in this Judicial District. *Id.* ¶ 13.

For example, here are some images of genuine PLIM PLIM Products incorporating the PLIM PLIM Copyrights, which are marketed and sold by Plaintiffs on Plaintiffs' website (https://www.plimplimshop.tv/):






And here are images of some Infringing Products sold by the Defendants:







Internet websites like the Defendant Internet Stores contribute to the hundreds of billions of dollars of infringing goods sold each year and pose a threat to economic growth and innovation across the world. *See* Declaration of Christopher Tom (the "Tom Decl."), ¶ 3 & Ex. 1. For instance, according to intellectual property rights seizures-statistics report issued by U.S. Customs

and Border Protection, the manufacturer's suggested retail price of goods seized by the U.S. government in fiscal year 2024 was approximately $5.4 billion, and over $4.1 billion of seized goods came from China alone. *Id.* ¶ 4 & Ex. 2.

1. Defendants Operate Legitimate-Looking Internet Stores

Defendants typically facilitate sales by designing the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine PLIM PLIM Products. Hormaechea Decl. ¶ 18. Many of the Defendant Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, Amazon.com ("Amazon"), and PayPal.com ("PayPal"). *Id.* The Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* ¶ 19. But Plaintiff has not licensed or authorized Defendants to use the PLIM PLIM Copyrights and none of the Defendants is an authorized retailer of genuine PLIM PLIM Products. *Id.* ¶ 16.

2. Defendants Illegitimately Optimize the Defendant Internet Stores for Search Engines

Defendants also deceive unknowing consumers by using the PLIM PLIM Copyrights without authorization within the content of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for PLIM PLIM Products. Hormaechea Decl. ¶ 20. Additionally, Defendants use other unauthorized search engine optimization ("SEO") tactics and social media spamming so that the listings for the Defendant Internet Stores show up at or near the top of relevant search results and misdirect consumers searching for genuine PLIM PLIM Products. *Id.* Defendants often utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. *Id.*

3. Defendants Conceal Their Identities

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Hormaechea Decl. ¶ 21. For example, many of Defendants' listed names and physical addresses are incomplete. *Id.* Other Defendant Internet Stores use privacy services that conceal the owners' identity and contact information. *Id.* Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* These are some of the many common tactics used by the Defendants to conceal their identities—and the full scope and interworking of their massive counterfeiting operation—to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendant Internet Stores. *Id.* ¶ 22. For example, the Infringing Products for sale in the Defendant Internet Stores bear similar irregularities and indicia of infringement to one another, suggesting that the Infringing Products were manufactured by and come from common sources and that Defendants are interrelated. *Id.*

4. Defendants Evade Enforcement

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online infringers use a variety of other common tactics to evade enforcement efforts. Hormaechea Decl. ¶ 23. For example, infringers like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id.* Infringers also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. *Id.* Rogue servers are notorious for ignoring take-down demands sent by brand owners. *Id.* Infringers also typically ship products in

small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.*

Additionally, infringers such as Defendants typically operate multiple credit card merchant accounts as well as marketplace platform accounts behind layers of payment gateways so that they can continue operation in spite of enforcement efforts. *Id.* ¶ 24. Further, such counterfeiters typically maintain offshore bank accounts and regularly move funds from their PayPal accounts to offshore bank accounts outside the jurisdiction of this Court. *Id.*

Overall, Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Internet Stores and the Infringing Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of infringers. Upon information and belief, Defendants actively consort to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with infringing versions of the PLIM PLIM Copyrights in the same transaction, occurrence, or series of transactions or occurrences.

As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their infringement operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' infringement network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff intends to take appropriate steps to amend the Complaint.

## III. <u>ARGUMENT</u>

Defendants' purposeful, intentional, and unlawful conduct is causing, and will continue to cause, irreparable harm to Plaintiff's rights to the PLIM PLIM Copyrights. Hormaechea Decl. ¶¶

27–30. To stop Defendants' sale of Infringing Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the stop of any listings or sale of products infringing upon the PLIM PLIM Copyrights and the freezing of Defendants' assets. Without the relief requested by Plaintiff's Application, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with infringing imitations of the PLIM PLIM Copyrights via the Defendant Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Infringing Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the PLIM PLIM Copyrights and/or derivatives thereof and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will change to a new online store or platform and move any assets from U.S.-based bank accounts, including PayPal accounts. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See, e.g.*, *Weili Fang*, 2021 WL 1249631, at *2 ("If Defendants are given notice of Plaintiffs' application, they are likely to hide, conceal, transfer or otherwise dispose of their ill-gotten proceeds from their sales of counterfeit and infringing products."); *Lindsey Adelman Studio*, 2019 WL 7599931, at *2

("Defendants may easily and quickly transfer the registrations for their internet domain name, or modify registration data and content, change hosts, and redirect traffic to other websites, thereby thwarting Plaintiffs' ability to obtain meaningful relief."). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

This Court has original subject matter jurisdiction over the copyright claim pursuant to the Copyright Laws of the United States, 17 U.S.C. § 101 *et seq.*, and 28 U.S.C. §§ 1331, 1338(a)–(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1400.

### A. <u>This Court May Exercise Personal Jurisdiction Over Defendants</u>

Personal jurisdiction exists over Defendants in this Judicial District pursuant to C.P.L.R. § 302(a)(1) and C.P.L.R. § 302(a)(3), or, in the alternative, Fed. R. Civ. P. 4(k) because the Defendant Internet Stores transacted business in New York by accepting orders of Infringing Products from and offer shipping to New York addresses located in this Judicial District. Courts in the Southern District of New York regularly exercise personal jurisdiction over websites using registered copyrights without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to New York residents over the Internet. *See Weili Fang*, 2021 WL 1249631, at *1; *BackforthTradeltd*, 2020 WL 6700503, at *1–2 (preliminary injunction order after granting TRO); *53 Romantic House Store*, 2020 WL 670048, at *1–2 (same); *Lindsey Adelman Studio*, 2019 WL 7599931, at *1; *Cengage Learning*, 2018 WL 2244461, at *1; *Kipling Apparel Corp*, 2016 WL 8814345, at *1–2 (S.D.N.Y. Feb. 19, 2016).

Similarly, this Court has exercised personal jurisdiction over defendants who have offered and sold counterfeit and infringing products through third-party stores on online marketplaces such as Amazon, even though these stores have claimed they do not control their storefronts in the same manner independent websites do. *See Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co.*, No.

15-cv-8459 (LGS), 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016). Despite that alleged lack of control, courts can still assert jurisdiction over "internet sellers who use an internet storefront like Amazon" when such sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id.* (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11–cv–3458 (JS)(ETB), 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012)).

Further, the Second Circuit recently affirmed that courts in this Judicial District could exercise personal jurisdiction over an internet store based in China that accepted orders for counterfeit dolls to be shipped to New York under C.P.L.R. § 302(a)(1), even though the orders were later cancelled and the product was never shipped into New York. *See Am. Girl, LLC v. Zembrka*, 118 F.4th 271, 276–77 (2d Cir. 2024). As that court explained, the "single act" requirement to establish personal jurisdiction in New York does not require actual shipment of a product to New York but only a transaction, even if that sale was later cancelled and refunded. *Id.* at 277–78 (clarifying that the court's decision in *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) did not depend on the shipment of good but "rather on the fact that a single act can potentially suffice for establishing personal jurisdiction" in New York).

As detailed in the Complaint and in the Hormaechea Declaration, Plaintiff's investigation into Defendants confirms that the Defendant Internet Stores permit Infringing Products to be sold and shipped to addresses in this Judicial District. *See* Hormaechea Decl. ¶ 13. Exhibit 2 to the Hormaechea Declaration contains copies of screenshots from each Defendant Internet Store and product check-out pages, reflecting the marketing and ability to order Infringing Products to the Southern District of New York. For that reason alone, this Court can exercise personal jurisdiction over each of the Defendants.

### B. <u>Standard for Temporary Restraining Order and Preliminary Injunction</u>

The standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See 3M Co. v. Performance Supply, LLC*, 458 F. Supp. 3d 181, 191 (S.D.N.Y. 2020) (citing *Mahmood v. Nielsen*, 312 F. Supp. 3d 417, 421 (S.D.N.Y. 2018)). A party seeking to obtain either must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) that the balance of hardships favors the plaintiff; and (4) that the public interest will not be disserved if an injunction issues. *Id*.

When a party requests an *ex parte* temporary restraining order, the "Court must also determine whether '(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition,' and '(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.'" *Cengage Learning*, 2018 WL 2244461, at *1 (quoting Fed. R. Civ. P. 65(b)(1)).

### C. <u>Plaintiff's Claim Will Likely Succeed on the Merits</u>

To establish copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991). Copyright infringement, like trademark infringement, is a strict liability offense. *See Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 422 (S.D.N.Y. 2018).

Here, Plaintiff is likely to succeed on the merits of its copyright infringement claim. First, Plaintiff owns all exclusive rights in the PLIM PLIM Copyrights. *See also* Hormaechea Decl. ¶ 4; 17 U.S.C. § 501(b) (noting the legal or beneficial owner of an exclusive right under a copyright is entitled to institute an action for any infringement).

Second, Plaintiff has shown that Defendants have directly made unauthorized copies of Plaintiff's PLIM PLIM Copyrights, and/or, alternatively, Defendants' representations of Plaintiff's PLIM PLIM Copyrights in the Defendant Internet Stores are strikingly similar, or at the very least substantially similar, to Plaintiff's PLIM PLIM Copyrights and constitute unauthorized copying, reproduction, distribution, creation of a derivative work, and/or public display of Plaintiff's copyrights for the PLIM PLIM Products. As just one example, Defendants deceive unknowing consumers by using the PLIM PLIM Copyrights without authorization within the products sold at and product photographs displayed at the Defendant Online Stores to attract customers as follows:

*Exemplar of Genuine Products Marketed and Sold by Plaintiff on Plaintiff's Website (https://plimplim.tv/en/) Incorporating Plaintiff's PLIM PLIM Copyrights*




*COMPARED TO*

*Exemplary Listing of Defendant Online Stores' Infringing Product Embodying Plaintiff's PLIM PLIM Copyrights*







Overall, it is clear that Defendants have copied Plaintiff's copyrights without Plaintiff's consent.

### D. <u>There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief</u>

While loss of goodwill is "more commonly associated with trademark cases, [] it is also applicable to copyright as well." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1173 (7th Cir.

1997). In the Second Circuit, courts have found irreparable harm in copyright cases where the infringement "would substantially diminish the value" of the work, "losses would be difficult to measure," and "monetary damages would be insufficient to remedy the harms." *Hudson Furniture, Inc. v. Mizrahi*, No. 20-cv-4891 (PAC), 2020 WL 5202118, at *6 (S.D.N.Y. Sep. 1, 2020) (citing *WPIX, Inc. v. ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012)). It is well settled, for example, that using another's copyrights to create consumer confusion and loss of goodwill constitutes irreparable harm sufficient to satisfy the preliminary injunction standard. *See id.* (noting "harm to [a] brand, consumer confusion, and loss of goodwill . . . constitute[] irreparable harm"); *Pearson Educ., Inc. v. Labos*, No. 19-cv-0487 (CM), 2019 WL 1949820, at *6 (S.D.N.Y. Apr. 23, 2019); *see also Mister Softee, Inc. v. Tsirkos*, No. 14-cv-1974 (LTS)(RLE), 2015 WL 7458619, at *5 (S.D.N.Y. Nov. 23, 2015) (finding irreparable harm because "Plaintiffs have no actual control over the quality of Defendant's products or services"); *see also* 17 U.S.C. §§ 502, 503 (providing for injunctive relief for copyright infringement and enjoining any use or exploitation by Defendants of their infringing work and that any of Defendants' infringing products be impounded and destroyed). Indeed, irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971).

In the context of copyright infringement, the Second Circuit has held that the harm to the plaintiff's property interest is irreparable in light of possible market confusion. *See Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc.,* 312 F.3d 94, 96–97 (2d Cir. 2002) ("Since [the defendant] sells essentially the same product as [the plaintiff] to the same market, it will obviously suffer considerable loss if [the defendant] disseminates its [infringing products], because

each sale of an [infringing product] probably results in one less sale of the [plaintiff's product]. [Plaintiff] thus satisfies the 'irreparable harm' prong of the preliminary injunction standard."); *see also* 17 U.S.C. §§ 502, 503. Further, courts have held that "'the most corrosive irreparable harm' attributable to copyright infringement is the victim's inability to control the nature and quality of the infringer's goods," *see, e.g.*, *Jefferson v. Johnson Publ'g, Inc.*, No. 92-cv-7011, 1992 WL 318615, at *2 (N.D. Ill. Oct. 28, 1992) (citing cases), and that monetary damages are likely to be inadequate compensation for such harm. *See Omega Importing*, 451 F.2d at 1195; *see also Ideal Indus., Inc. v. Gardener Bender, Inc.*, 612 F.2d 1018, 1026 (7th Cir. 1979).

Here, Defendants' unauthorized use of the PLIM PLIM Copyrights, along with their substantial efforts to mislead and confuse consumers, has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, reputational damage, loss of exclusivity, and loss of future sales. *See* Hormaechea Decl. ¶¶ 26–30. The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *NYP Holdings v N.Y. Post Publ'g Inc*., 63 F. Supp. 3d 328, 341–42 (S.D.N.Y. 2014); *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18-cv-12069 (JPO), 2020 WL 774237 at *5 (S.D.N.Y. Feb. 18, 2020); *see also CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 145 (E.D.N.Y. 2011) (the extent of the harm to a plaintiff resulting from "[i]njecting the market with counterfeit products will not only result in lost sales, but will impair plaintiffs' reputation achieved through considerable time and effort. This type of harm cannot be redressed by monetary damages available at law.").

**E. <u>The Balancing of Equities Tips in Plaintiff's Favor</u>**

"It would not be a 'hardship' for Defendant to refrain from engaging in unlawful activities related to [the Plaintiff's] brand." *3M Co.,* 458 F. Supp. 3d at 197; *Rovio Ent., Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 547 (S.D.N.Y. 2015) (quoting *WPIX, Inc.*, 691 F.3d at 287) (noting "[i]t is axiomatic that an infringer . . . cannot complain about the loss of ability to offer its infringing product."). . If a "defendant appears to be a brazen infringer," a defendant should receive little equitable consideration from the Court. *Am. Greetings Corp. v. Kleinfab Corp.*, 400 F. Supp. 228, 234 (S.D.N.Y. 1975); *see also Bulgari S.p.A. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No 14-cv-4819, 2014 WL 3749132, at *6 (N.D. Ill. July 18, 2014) ("As willful infringers, Defendants are entitled to little equitable consideration"). In that regard, where the evidence shows that a defendant has knowingly engaged in infringing activities, "it follows that the defendant is not legally harmed by the fact that it cannot continue [its misconduct] even if this ultimately puts [the defendant] out of business." *WPIX, Inc.*, 691 F.3d at 287; *see also Rovio Ent.*, 97 F. Supp. 3d at 547.

As Plaintiff has demonstrated, Defendants have been profiting from the sale of the Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor.

**F. <u>Issuance of the Injunction Is in the Public Interest.</u>**

An injunction serves the public interest in this case because "it will preserve the integrity of the copyright laws, which embody an important national policy of encouraging creativity." *ISC-Bunker Ramo Corp. v. Altech, Inc.*, 765 F. Supp. 1310, 1332–33 (N.D. Ill. 1990) (citation omitted). Further, federal courts have long held that in addition to protecting the property rights of an individual, intellectual property laws are also concerned with the protection of the public from being deceived. *See N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344

(S.D.N.Y. 2010) ("[T]he public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality."); *NYP Holdings*, 63 F. Supp. 3d at 342 (noting consumers have a "protectable interest in being free from confusion, deception and mistake"); *see also Shashi, Inc. v. Ramada Worldwide*, *Inc.,* No. 7:05-cv-00016, 2005 WL 552593, at *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion.").

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of copyrights used in connection with those goods and services. *See, e.g., CJ Prods. v. Concord Toys*, No. 10–cv–5712 (ENV)(JO), 2011 WL 178610, at *6 (E.D.N.Y. Jan. 19, 2011) ("In light of the significant public policy concerns regarding the sale and distribution of children's toys without any assurance or labels indicating that defendants' products comply with federal and state health and safety requirements, the public interest strongly favors plaintiffs."). Unless Defendants' unauthorized use of the PLIM PLIM Copyrights is enjoined, the public will continue to be confused and misled by Defendants' conduct.

## IV. <u>THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.</u>

The scope of the injunctive relief sought by Plaintiff here is appropriate both under Rule 65, as well as under the Copyright Act, which authorizes courts to "grant temporary and final injunctions on terms as it may deem reasonable to prevent or restrain infringement of a copyright,"

17 U.S.C. § 502, and provides that any of Defendants' infringing products be impounded and destroyed, 17 U.S.C. § 503.

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unlawful Use of Plaintiff's Intellectual Property Is Appropriate.

Plaintiff requests a temporary injunction requiring Defendants to immediately cease all use of the PLIM PLIM Copyrights on or in connection with all Defendant Internet Stores. Such relief is necessary to stop the ongoing harm to the PLIM PLIM Copyrights and associated goodwill, as well as harm to consumers, and to prevent Defendants from continuing to benefit from their unauthorized use of the PLIM PLIM Copyrights.

The need for *ex parte* relief is magnified in today's global economy where infringers can operate over the internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Infringing Products.

Many courts in this district have authorized immediate injunctive relief in similar cases involving copyright infringement. *See, e.g.*, *Weili Fang,* 2021 WL 1249631; *Cengage Learning*, 2018 WL 2244461.

### B. Preventing the Fraudulent Transfer of Assets Is Appropriate.

Plaintiff also requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered.

Courts have the inherent authority to issue a prejudgment asset restraint when a complaint seeks relief in equity. *Cengage Learning,* 2018 WL 2244461, at *3 ("[W]here plaintiffs seek both

equitable and legal relief in relation to specific funds, a court retains its equitable power to freeze assets.") (internal quotations and citations omitted); *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, because Plaintiff has shown a strong likelihood of succeeding on the merits of its copyright infringement claim, the Copyright Act provides that Plaintiff is "entitled to recover actual damages suffered . . . as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. *See Microsoft Corp. v. 9038-3746 Quebec, Inc.*, No. 06-cv-0892, 2007 WL 3232465, at *1 (N.D. Ohio Nov. 1, 2007) (granting temporary restraining order freezing certain business assets "pursuant to Federal Rule of Civil Procedure 65, the Court's general equitable power, and the Court's statutory authority to order disgorgement of profits pursuant to . . . 17 U.S.C. § 504(b)"). Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment freeze to preserve the relief sought by Plaintiff.

This District previously entered an asset restraining order in a copyright and trademark infringement case brought by textbook publishers against defendants engaged in the sale of counterfeit textbooks through online marketplaces. *Cengage Learning,* 2018 WL 2244461, at *3–4. The Court recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* at *3 (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund*, 527 U.S. 308 (1999)); *see also Gucci Am., Inc. v. Weixing Li,* No. 10-cv-4974, 2011 WL 6156936, at *3 (S.D.N.Y. Aug. 23, 2011), *aff'd in relevant part and vacated on other grounds*,

768 F.3d 122 (2d Cir. 2014) (same); *see also Balenciaga Am., Inc. v. Dollinger,* No. 10-cv-2912 (LTS), 2010 WL 3952850, at *7 (S.D.N.Y. Oct. 8, 2010) (finding because the publishers sought an accounting of the defendants' profits, an equitable remedy, the Court found that it had the authority to freeze the defendants' assets); *Animale Grp. Inc.*, 256 F. App'x at 709; *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd.*, 970 F.2d at 559; *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("Since the assets in question . . . were the profits the [defendants] made by unlawfully stealing [plaintiffs'] services, the freeze was appropriate and may remain in place pending final disposition of this case.").

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.[3]

### C. Plaintiff Is Entitled to Expedited Discovery

"A party may seek expedited discovery before the Federal Rules of Civil Procedure Rule 26(f) conference when authorized by a court order." *Next Phase Distrib., Inc. v. John Does 1-27*,

---

[3] Alternatively, the Court may grant a pre-judgment attachment of Defendants' domestic assets under Federal Rule of Civil Procedure 64 and N.Y. C.P.L.R. § 6212(a). Rule 64 authorizes"[e]very remedy . . . that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). The rule specifically mentions attachment as an available remedy. Fed. R. Civ. P. 64(b). And the C.P.L.R. permits attachment upon a showing "that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff." C.P.L.R. § 6212(a). Here, Plaintiffs will succeed on the merits for the reasons given above, and attachment is appropriate for either of at least two reasons. First, C.P.L.R. § 6201(1) authorizes attachment if "the defendant is a nondomiciliary residing without the state, or is a foreign corporation not qualified to do business in the state." And second, C.P.L.R. § 6201(3) permits attachment if "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiffs favor, has assigned, disposed of, encumbered or secreted prope1iy, or removed it from the state or is about to do any of these acts." Here, the Defendants appear to be foreign entities, and there is a substantial risk that they will remove assets outside of the jurisdiction absent injunctive relief or attachment.

284 F.R.D. 165, 171 (S.D.N.Y. 2012) (citing Fed. R. Civ. P. 26(d)(1)). "Courts in this District use a flexible standard of reasonableness and good cause when considering whether to grant an order." *Cengage Learning*, 2018 WL 2244461 at *4 (citing *Next Phase Distrib.*, 284 F.R.D. at 171) (internal quotations omitted).

Furthermore, courts have broad power over discovery and may permit discovery to aid in the identification of unknown defendants. See Fed. R. Civ. P. 26(b)(2); *adMarketplace, Inc. v. TeeSupport Inc.*, No. 13-cv-5635(LGS), 2013 WL 4838854, at *2 (S.D.N.Y. Sept. 11, 2013). As described above, Defendants are using third-party payment processors such as Visa, PayPal, AliPay and Western Union, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment-system accounts Defendants use for their infringing sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. As Defendants have engaged in many deceptive practices to hide their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### D. **Service of Process by E-mail and/or Electronic Publication Is Warranted in this Case**

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff requests authorization to serve process by e-mail and by electronically publishing a link to the Complaint, the Temporary Restraining Order, the papers supporting this Application, and any other relevant documents on a website to which the Defendant Internet Stores will be transferred (the "Link"). Plaintiff submits that providing notice via electronic publication and e-mail, along with any notice that Defendants receive from the online marketplace providers and payment processors, is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

Federal Rule of Civil Procedure 4(f)(3) allows this Court to authorize service of process by any means not prohibited by international agreement. *See Google LLC v. Doe 1*, No. 25-cv-10440 (JSR), 2026 WL 353660, at *2 (S.D.N.Y. Feb. 9, 2026); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002). This Court has held that service through email and website publication is "reasonably calculated, under all the circumstances, to apprise [defendants] of the pendency of the action." *Google LLC*, 2026 WL 353660, at *2 (quoting *Kelly Toys Holdings, LLC. v. Top Dep't Store,* No. 22-cv-558 (PAE), 2022 WL 3701216, at *9 (S.D.N.Y. Aug. 26, 2022)). Further, the Ninth Circuit in *Rio Properties* held, "[w]ithout hesitation," that e-mail service of an online business defendant is "constitutionally acceptable." 284 F.3d at 1017. The Court reached this conclusion, in part, because the defendant conducted its business over the internet, used e-mail regularly in its business, and encouraged parties to contact it via e-mail. *Id.*

Likewise, in Plaintiff's counsel's experience with similar defendants in other matters, Defendants are almost certain to regularly rely on and use the e-mail addresses that the Defendants provide to eBay, Shein, Walmart, and other third-party payment processers to communicate

concerning monies received through the Defendant Internet Stores. Thus, obtaining such e-mail addresses from eBay, Shein, and Walmart is often the fastest and most direct way to get into contact with individuals and entities like the Defendants that are engaged in the sale of infringing products. *See* Hormaechea Decl. ¶ 17. Indeed, Defendants appear to rely primarily on electronic communications to communicate with their customers, demonstrating the reliability of this method of communication by which the Defendants may be apprised of the pendency of this action. Authorizing service of process via e-mail and/or electronic publication will benefit all parties and the Court by ensuring that Defendants receive prompt notice of this action, thus allowing this action to move forward expeditiously.

1. Defendants' Addresses for Service Are Not Known.

Plaintiff has good cause to suspect the Defendants are residents of China. *See* Declaration of Yingchun Hou (the "Hou Decl."), ¶ 10 n.1 & Ex, 1, Hormachea Decl. Ex. 2. The United States and the People's Republic of China are both signatories to the Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil and Commercial Matters (the "Hague Convention"). *See* Tom Decl. ¶ 7. However, according to Article 1 of The Hague Convention, the "convention shall not apply where the address of the person to be served with the document is not known." *Id.* ¶ 7 & Ex. 5; *see also Google LLC*, 2026 WL 353660, at *1 (finding that plaintiff was not bound by Hague Convention after it made reasonable efforts to locate defendants and could serve defendants via electronic methods after *Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi*, 164 F.4th 164 (2d Cir. 2025)); *Kelly Toys Holdings*, 2022 WL 3701216, at *9 (same); *Zuru (Singapore) Pte., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A*, No. 22-cv-2483 (LGS), 2022 WL 14872617, at *2 (S.D.N.Y. Oct. 26, 2022) (noting electronic service was proper under Rule 4(f)(3)

when defendants did not provide accurate physical addresses); *Cengage Learning*, 2018 WL 2244461, at *4–5 (same).

In this case, some Defendants utilizing the Shein and Walmart marketplace platforms at one point listed a supposed physical address for their business on their store's homepage or elsewhere. Plaintiff and its representatives have investigated the viability of serving this set of Defendants with physical documents. Specifically, Plaintiff and its representatives have utilized a specialized investigative firm, Panoramic Consulting Ltd. ("Panoramic"), with years of experience researching online merchants in China. *See* Hou Decl. ¶¶ 2–3. Panoramic conducted a multi-layered inquiry into each Defendant's purported physical address and contact information as listed on their seller/store profile pages. The Panoramic investigators performed comprehensive searches using multiple independent data sources, including Tianyancha, a major platform aggregating Chinese government registration data and corporate records, and Baidu.com, China's leading and largest search engine and mapping system, which compiles business information from authoritative national databases. *Id.* ¶¶ 5–7.

In addition to researching the listed addresses of these Defendants, Panoramic researched and identified each store's registered telephone number listed with the marketplace platform, or where a number was not listed, the telephone number identified through additional research tied to the listed physical addresses. *Id.* ¶ 8. Panoramic attempted to contact these Defendants at the listed telephone numbers because businesses in China that do not provide or confirm a working telephone number for their businesses cannot be served, as couriers in China will require a working phone number to ensure their service attempt can be completed. *Id.* ¶ 16. Similarly, it is very difficult to confirm the address for any business that does not provide or confirm its telephone

number, since mailing services in China will be unable to confirm or verify the listed address without a telephone number. *Id.*

Based on their investigation and extensive efforts to confirm the addresses of these Defendants, none of the Defendants utilizing the Shein or Walmart platforms have listed locations that can be verified and thus used to serve defendants at their listed location. *Id.* ¶¶ 10–15. In particular, many of these Defendants listed telephone numbers that appear to have no relation to their business and suggest that their registered information is false, while other Defendants refused to provide any information about their location or their business—suggesting that these businesses will seek to avoid service efforts. *Id.* ¶¶ 10, 14–16. Further, the research of these Defendants indicated that twenty-two of them have listed addresses, but the addresses are incomplete and invalid because they omit specific identifying information, such as a room and/or unit number, and they also failed to list a seller name or phone number to locate. *Id.* ¶ 11. Stores with inaccurate, incomplete, or unverifiable addresses, along with missing phone numbers, cannot be reliably contacted or served because there is no dependable way to contact any representatives, and Plaintiff cannot rely upon the listed address to serve these defendants. *Id.* ¶¶ 11–13.

Plaintiff and its team also investigated the location and telephone number of a Defendant who utilizes the eBay marketplace platform. *Id.* ¶ 17. Unlike Shein and Walmart, the home pages for stores on eBay only list an alleged country of origin and do not provide any other address or contact information for sellers, including its company name. *Id.* Without any additional information available for this Defendant, Plaintiff's investigator instead contacted this store through the chat platform available through eBay. However, the Defendant did not reply to the investigator's message, and further research of the store did not reveal any other information about the store or related business. *Id.* ¶¶ 18–19. Because the eBay store did not provide any contact

information or information about its location, Plaintiff is unable to determine the exact physical whereabouts or identity of this Defendant as well.

Because Defendants provide incomplete or inaccurate information about their location and contact information, their locations are not known, and Plaintiff will not be able to notify the Defendants of this action or serve them without using alternative methods of service. Absent the ability to serve Defendants in this manner, Plaintiff will almost certainly be left without the ability to pursue this action because no other contact information is available for the Defendants. Indeed, Defendants are likely to have listed incorrect names and physical address information precisely for the purpose of concealing their locations and avoiding liability for their unlawful conduct. *See* Hormaechea Decl. ¶ 21.

A number of courts, including in this District, have held that alternative forms of service pursuant to Rule 4(f)(3), including e-mail service, are appropriate and may be the only means of effecting service of process "when faced with an international e-business scofflaw." *Rio Props.*, 284 F.3d at 1018; s*ee also Google LLC*, 2026 WL 353660, at *1–2; (permitting alternative service by electronic means as part of a preliminary injunction); *Cengage Learning,* 2018 WL 2244461, at *5 (finding email service appropriate on defendants who provided no true names or physical addresses and thus were not known)); *Kelly Toys*, 2022 WL 3701216, at *9–10 (affirming electronic service on online retailers who hid their location and instead provided false addresses).

As such, federal courts, including in this District, have permitted alternative service of process in matters involving copyright infringement. *See WowWee Grp. Ltd. v. Haoqin*, No. 17-cv-9893, 2019 WL 1316106, at *2 (S.D.N.Y. Mar. 22, 2019) (upholding electronic service on online merchants who were "anonymous individuals or businesses . . . that traffic in counterfeit goods" and whose identities consist of "only a username and corresponding email address");

*Cengage Learning,* 2018 WL 2244461, at *5 (permitting service by e-mail on foreign defendants where defendants did not provide true legal names or physical addresses on their online storefronts).

Furthermore, Rule 4 does not require that a party attempt service of process by other methods enumerated in Rule 4(f) before petitioning the court for alternative relief under Rule 4(f)(3). *Rio Props.*, 284 F.3d at 1014–15. As the Ninth Circuit explained in *Rio Properties*, Rule 4(f) does not create a hierarchy of preferred methods of service of process. *Id.* at 1014. To the contrary, the plain language of the Rule requires only that service be directed by the court and not be prohibited by international agreement. There are no other limitations or requirements. *Id.* Alternative service under Rule 4(f)(3) is neither a "last resort" nor "extraordinary relief," but is rather one means among several by which an international defendant may be served. *Id.* at 1015. As such, this Court may allow Plaintiff to serve the Defendants via electronic publication and/or e-mail.

2. <u>Defendants' Infringements of Plaintiff's Intellectual Property Create Exigent Circumstance for Service</u>

Further, the nature of Plaintiff's claims—that anonymous online merchants are actively infringing upon its intellectual property—present exigent circumstances that justify alternative service of certain filings and orders upon the infringing defendants. Article 15 of the Hague Convention expressly permits a judge to order "in case of urgency, any provisional or protective measures." *See* Hague Conv., Art. 15. The 1993 Advisory Committee Notes to Rule 4 expressly acknowledges that the Hague Convention does authorize "special forms of service in cases of urgency if convention methods will not permit service within the time required by the circumstance" and that "[i]n such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement." Fed. R. Civ.

P. 4. Accordingly, in similar cases involving infringement by foreign merchants operating online stores, courts in this District have acknowledged the need for timely service and have permitted electronic service of certain documents and orders under Rule 4(f)(3). *See ABC v. DEF*, No. 24-cv-8341 (DLC), 2024 WL 5168624, at *2 (S.D.N.Y. Dec. 13, 2024) (acknowledging that ongoing counterfeit activity creates exigencies that justify e-mail service of temporary restraining order and related orders); *Intersell Ventures, LLC v. 1688 Factory Direct Store Store*, No. 25-cv-408, 2025 WL 485715, at *6 (S.D.N.Y. Feb. 11, 2025) (stating exigencies of online counterfeiting justified electronic service of order and related documents on all defendants); *Parfum Francis Kurkdjian SAS v. Dongguan Laiqu Gems Handcraft Co., ltd*, No. 25-cv-2732 (MMG), 2025 WL 1276618, at *3 (S.D.N.Y. Apr. 29, 2025) (granting temporary restraining order against online merchants defendants and permitting electronic service of order on those defendants).

The proposed Temporary Restraining Order provides for issuance of a single original summons[4] in the name of "THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A HERETO" that shall apply to all Defendants in accordance with Federal Rule of Civil Procedure 4(b).

In summary, Plaintiff respectfully submits that service of process by e-mail and by the creation of the Link is reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections, if any. Plaintiff, therefore, requests permission to serve the Summons, Complaint, the Order to Show Cause (upon entry), and any supporting papers by e-mail and publication of the Link.

---

[4] The Advisory Committee Notes to the 1993 Amendment to Rule 4(b) states, "If there are multiple defendants, the plaintiff may secure issuance of a summons for each defendant, or may serve copies of a single original bearing the names of multiple defendants if the addressee of the summons is effectively identified." Fed. R. Civ. P. 4(b) advisory committee's note to 1993 amendment.

## V. A MODEST BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's evidence of infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Five Thousand U.S. Dollars ($5,000.00). Plaintiff submits that a bond in such amount is fair and reasonable under the circumstances and is consistent with the bond amounts required by courts in similar cases. *See, e.g., Kipling Apparel Corp.*, 2016 WL 8814345, at *3 ($5,000 bond); *Cengage Learning*, 2018 WL 2244461, at *6 ($2,500 bond); *Weili Fang*, 2021 WL 1249631, at *7 ($1,000 bond).

## CONCLUSION

Plaintiff's business, its PLIM PLIM brand, and consumers are being irreparably harmed by online counterfeiters. Without entry of the requested relief, the sale of Infringing Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an ex parte order is necessary to protect Plaintiff's copyright rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form proposed and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Dated: March 13, 2026

Respectfully,

*/s/ Christopher Tom*
Christopher Tom, Esq. (S.D.N.Y. Bar No. CT1983)
Boies Schiller Flexner LLP
55 Hudson Yards
New York, NY 10001
(212) 446-2300
ctom@bsfllp.com

*Counsel for Plaintiff KIDS MAGIC LLC*